IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GEORGE SPITTAL,

       Plaintiffs,                        No. CIV S-05-2042 FDC GGH PS

     vs.

APEL, et al.,

       Defendants.                <u>ORDER</u>

_____/

        This action, in which the plaintiff is proceeding pro se, has been referred to the undersigned pursuant to E.D. Cal. L.R. 72-302(c)(21). This action is proceeding against defendants Apel, members of the Sacramento County School Board, various other employees of the Sacramento City Unified School District (SCUSD), and the attorneys and law firm representing the defendants in this, and other ongoing and previously decided cases between the SCUSD, its employees, and the plaintiff. The plaintiff filed his original complaint on October 11, 2005, and amended once as a matter of right under Fed. R. Civ. P. 15 on December 27, 2005. The defendants filed two motions in response to the amended complaint; the first on behalf of the law firm and its attorneys, and the second on behalf of the members and employees of the school district.[1]

---

[1] Subsequent to the filing of the defendant's motion to dismiss, the plaintiff filed a motion for summary judgment. The plaintiff first filed a motion for summary judgment on February 10, 2006; however, this motion was not properly served on the defendant. The plaintiff

1

Plaintiff, a disbarred Ohio attorney, has brought no less than eight actions against the Sacramento City Unified School District, its Board members and employees as well as lawyers who defend the SCUSD and judges who rule against plaintiff in his lawsuits. Plaintiff treats the federal court in this district as his own personal stick with which to beat those who he believes makes his job as a substitute teacher with the SCUSD more difficult, or who disagree with his sometimes vitriolic viewpoint. The relatively de minimis filing fees in federal court make this possible. For a mere $250 (soon to be $350) plaintiff can force his protagonists to spend thousands of dollars in litigation defense costs. Whether plaintiff wins the lawsuit or not does not matter—defendants have lost financially every time. Plaintiff's conduct requires the undersigned to take action sua sponte.[2]

BACKGROUND

The plaintiff alleges violations of his First Amendment right to free speech and his Fourteenth Amendment right to Equal Protection. The plaintiff is a substitute teacher who has been employed by SCUSD on numerous occasions throughout the past four and a half years. These allegations appear to be the result of several conflicts with the defendant Apel and other employees of the school district, an ongoing dispute with the school board, and the legal arguments made by the defendants and their attorneys during previous litigation with this plaintiff. This is the eighth lawsuit filed by the plaintiff, all of them alleging violations of the plaintiff's constitutional rights by the school board, its employees, the law firm representing the

\\\\\

\\\\\

---

filed a motion for summary judgment against three defendants on February 15, 2006. He filed a second motion for summary against the members of SCUSD on February 27, 2006. Those summary judgment motions are rendered moot by this ruling and no opinion is offered on their merits.

[2] Defendants in previous actions have attempted to have vexatious litigant orders; for whatever reason, they do not seek the same in their motions to dismiss. However, the court is not powerless to act on its own to curb lawsuit abuse.

defendants in those actions, or some combination thereof.[3]

In the instant amended complaint, the plaintiff appears to allege several violations of his rights.  The complaint is a cutting and pasting of various handwritten, typed, and photocopied passages, with interlineations, notes, and editorial comments.  Several of those passages are directly lifted from previous filings, in some cases literal cuttings and pastings of previous arguments which have been excised from their previous filing and affixed to this complaint.  Consequently, ascertaining the specific allegations is difficult.[4]  Based on the totality of the amended complaint, it appears the plaintiff is alleging six violations of his rights under 18 U.S.C. § 1983.

The first and third causes of action involve a conflict on October 4, 2005, that the plaintiff had with the defendant Apel, a principal at a school where the plaintiff was employed as a substitute teacher.  While the specifics of the incident are difficult to discern from the complaint, it appears the plaintiff, a non-minority, and the defendant had a dispute about the plaintiff's attempt to discipline several non-white students that he claimed disrupted a class in which he was teaching.  The dispute between the plaintiff and the defendant Apel seems to have centered around the plaintiff's authority to remove the students from his class and defendant

---

[3] See No. CIV.S-00-1287 WBS PAN PS; No. CIV.S-00-1766 LKK GGH PS; No. CIV.S-01-0036 GEB JFM PS; No. CIV.S-04-1198 GEB DAD PS; No. CIV.S 05-0112 MCE DAD PS; No. CIV.S-05-0749 FCD DAD PS; No. CIV.S 05-1157 MCE KJM PS.  More will be said about these lawsuits herein.

[4] The difficulty of deciphering the plaintiff's complaint is evident on the face of the actual document.  The plaintiff asserts four causes of action on the cover sheet, handwriting the grievances underneath an apparently typewritten, and heavily photocopied title.  Within the document, he asserts six claims.  The first three alleged violations on the cover appear to deal with claim one within the complaint.  The fourth item listed on the cover appears to reference claim four in the complaint.  No mention is made on the cover sheet of claims two, three, five and six.
Furthermore, once inside the document, claims are cited with reference to photocopied or handwritten notes, extracts, or legal citations which vary in their applicability to the particular point being made by the plaintiff.  In many cases, the referenced documents are, at best, relevant only through the most liberal reading, and, at worst, a blatant misapplication of the law and therefore irrelevant.

Apel's actions in response. Plaintiff alleges discrimination, but the gist of these causes of actions reveal a personality conflict with his superiors. The third cause of action attacks the District's failure to protect plaintiff from student harassment.

The second and fourth causes of action concern policies, or the lack thereof, by SCUSD with regards to the October 4 incident and similar conflicts between white teachers and non-white students, as well as SCUSD's defense of other lawsuits by the plaintiff. Included within this cause of action are conclusory allegations that the SCUSD has a policy to discriminate against plaintiff because he speaks up for black children (when he is not castigating the SCUSD for failure to discipline them). The defendant law firm and its attorneys are also implicated in the fourth cause of action. The second cause of action also contains allegations that the school board retaliates against teachers who protest policies of the board. The fourth claim alleges (consistent with prior lawsuits) that the school board and their law firm deliberately misled prior tribunals through false and improper statements of fact and law in the course of litigating previous lawsuits by the plaintiff.

The fifth cause of action stems from an allegation by the plaintiff that he was not hired for substitute teaching positions because of his race and the fact that he had filed a lawsuit against the school board. The plaintiff does not provide specific information about this allegation; rather, he simply states that the violations occurred after January 1, 2005. This claim is an amalgamation of First Amendment and Due Process Clause claims.

The sixth cause of action apparently stems from the fact that the plaintiff was not retained as a substitute teacher following a disagreement with a school principal on November 14, 2005. According to the complaint, the disagreement was over a student or parent's complaint that the plaintiff referred to a child in his class as "a retard." The principal complained about is referred to only as "Ms. Beckworth." Despite the fact that the plaintiff makes a claim accusing her of improper conduct, Ms. Beckworth is confusingly not included as a party to this matter.

\\\\\

The complaint does not stop there; the remainder of the 47 page complaint adds exhibits. Some of the exhibits are fairly innocuous, e.g., memorialized policy statements; however, other exhibits contain continued allegations, argument and legal discussion. The additions render the complaint more confusing and unanswerable.

PLEADING REQUIREMENTS

Fed. R. Civ. P. 8 sets forth general rules of pleading in the Federal Courts. Complaints are required to set a forth (1) the grounds upon which the court's jurisdiction rests, (2) a short and plain statement of the claim showing entitlement to relief; and (3) a demand for the relief plaintiff seeks. Rule 8 requires "sufficient allegations to put defendants fairly on notice of the claims against them." McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991). The complaint does not meet these requirements.

Despite, or perhaps because of, the complaint being 47 pages in length, the court finds the allegations in plaintiff's amended complaint vague and conclusory, fueled by irrelevant vitriol and misinformation about the rights and obligations of all citizens under the law. As a result, the amended complaint fails to give fair notice to the defendants and does not state the elements of the claim plainly and succinctly. Jones v. Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984). Consequently, it does not meet the requirements for pleading under the law.

Plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support plaintiff's claim. Id. In the complaint, defendant merely cites an incident and concludes that it was a violation of his constitutional rights. In none of his claims does the plaintiff offer specific facts or a cognizable theory regarding why the action was a violation. The plaintiff simply concludes that he suffered some harm because he was white, or because he disciplined minority students, or because he spoke out against school district policies, or because he has a history of litigation with the school district. At every turn, the plaintiff attempts to bolster his amended complaint by invoking the constitutional buzzwords of due

\\\\\

5

1  process, equal protection, and freedom of speech.[5]  It is difficult for any defendant to understand
2  precisely to what recognized federal claim they should answer.  Moreover, mere reference to a
3  federal right does not create the necessary specificity which would allow the defendant to
4  respond to the plaintiff's allegations.  As a result, the complaint's allegations are not sufficient to
5  put defendants fairly on notice of their alleged misconduct.  See Conley v. Gibson, 355 U.S. 41,
6  47, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957); Richmond v. Nationwide Cassel L.P., 52 F.3d 640,
7  645 (7th Cir. 1995) (amended complaint with vague and scanty allegations fails to satisfy the
8  notice requirement of Rule 8); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1202
9  (2d ed. 1990).

10      Also, plaintiff must include all his allegations within the claims of the complaint.
11  Adding exhibits which contain further allegations, argument and legal discussion unfairly
12  multiply the allegations to which an answer or motion to dismiss are directed.  Although
13  defendants in their motions attempt to speak to various claims made by plaintiff, their motions
14  are essentially a guess as to what real claims plaintiff is making.  The court refuses to adjudicate
15  claims on a speculated basis with the oftentimes result that theories and facts transmute to
16  something else on review.

17      This deficiency in pleading is sufficient in and of itself to warrant dismissal with
18  leave to amend.  As discussed below, because of the history of plaintiff's frivolous litigations,
19  where many of the frivolities are repeated in the complaint herein, no amendment will be
20  accepted without the posting of a vexatious litigant bond.
21  \\\\\

---

[5] The plaintiff's first claim is his most factually detailed; however, even in this instance, he fails to allege sufficient facts which would meet the pleading requirements of the Rules.  In support of his allegation of retaliation, he states simply that a defendant interrupted his class to "harass, defame, belittle, and embarrass (sic)" and told him that he should not come back [to work at the school]."  However, the plaintiff then goes on to offer no evidence of any language which could be remotely considered defamatory, nor does he refer to any acts by the defendant which could be considered actual retaliation.  In fact, from the facts of his sixth claim, it appears the plaintiff was back at work in the district 10 days after the incident alleged in his first claim.

1  A VEXATIOUS LITIGANT ORDER WHICH REQUIRES THE POSTING OF A BOND IS
2  APPROPRIATE

3  Several sources authorize the court to order a plaintiff to post security. The court
4  has inherent authority to require that security be posted. <u>Simunet East Associates v. Ramada</u>
5  <u>Hotel Operating Company</u>, 37 F.3d 573, 574 (9th Cir. 1994); <u>In re Merrill Lynch Relocation</u>
6  <u>Management, Inc.</u>, 812 F.2d 1116, 1121 (9th Cir. 1987). Additionally, "[w]hile no federal statute
7  authorizes security for costs, the District Courts may make their own rules not inconsistent with
8  the Federal Rules of Civil Procedure." <u>Russell v. Cunningham</u>, 233 F.2d 806, 811 (9th Cir.
9  1956) (citing Fed. R. Civ. P. 83). <u>See</u> also Charles A. Wright & Arthur R. Miller, <u>Federal</u>
10 <u>Practice and Procedure</u> § 1025 (2002). Local Rule 65.1-151(b) permits the court at any time, on
11 its own motion or that of a party, to order a party to give security, bond, or undertaking in such
12 amount as the Court may at any time determine to be appropriate. Finally, this Circuit has
13 acknowledged the "inherent power of federal courts to regulate the activities of abusive litigants
14 by imposing carefully tailored restrictions under the appropriate circumstances." <u>De Long v.</u>
15 <u>Hennessey</u>, 912 F.2d 1144, 1146 (9th Cir. 1990) (discussing requirements, pursuant to the All
16 Writs Act,  28 U.S.C. S 1651(a), for issuing an order requiring a litigant to seek permission from
17 the court prior to filing any future suits).

18 Local Rule 65.1-151(b) provides: "The provisions of Title 3A, part 2, of the
19 California Code of Civil Procedure, relating to vexatious litigants, are hereby adopted as a
20 procedural rule of this Court on the basis of which the Court may order the giving of security,
21 bond, or undertaking, although the power of the court shall not be limited thereby." Cal. Code
22 Civ. P., Title 3A, part 2, commences with § 391. Cal. Code Civ. P. § 391.1 requires a party to
23 furnish security on a showing that (1) the party is a vexatious litigant, and (2) there is no
24 \\\\\
25 \\\\\
26 \\\\\

7

reasonable probability that she will prevail in the instant litigation.[6]  A vexatious litigant is, <u>inter</u>

---

[6] Cal Code Civ. Pro. § 391 provides:
   As used in this title, the following terms have the following meanings:
   a) "Litigation" means any civil action or proceeding, commenced, maintained or pending in any state or federal court.
   (b) "Vexatious litigant" means a person who does any of the following:
   (1) In the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been (i) finally determined adversely to the person or (ii) unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing.
   (2) After a litigation has been finally determined against the person, repeatedly relitigates or attempts to relitigate, in propria persona, either  (i) the validity of the determination against the same defendant or defendants as to whom the litigation was finally determined or (ii) the cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by the final determination against the same defendant or defendants as to whom the litigation was finally determined.
   (3) In any litigation while acting in propria persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay.
   (4) Has previously been declared to be a vexatious litigant by any state or federal court of record in any action or proceeding based upon the same or substantially similar facts, transaction, or occurrence.
   (c) "Security" means an undertaking to assure payment, to the party for whose benefit the undertaking is required to be furnished, of the party's reasonable expenses, including attorney's fees and not limited to taxable costs, incurred in or in connection with a litigation instituted, caused to be instituted, or maintained or caused to be maintained by a vexatious litigant.
   (d) "Plaintiff" means the person who commences, institutes or maintains a litigation or causes it to be commenced, instituted or maintained, including an attorney at law acting in propria persona.
   (e) "Defendant" means a person (including corporation, association, partnership and firm or governmental entity) against whom a litigation is brought or maintained or sought to be brought or maintained.

391.2. provides:
   At the hearing upon such motion the court shall consider such evidence, written or oral, by witnesses or affidavit, as may be material to the ground of the motion.  No determination made by

8

alia, a person acting pro per who repeatedly files unmeritorious motions, pleadings, or other papers. That plaintiff was a lawyer does not change his status as a pro per plaintiff since he is, without question, representing himself. See Kay v. Ehrler, 499 U.S. 432, 437, 111 S. Ct. 1435, (1991) (denying attorney's fees to lawyer appearing pro se and observing that lawyer appearing pro se is "deprived of the judgment of an independent third party in framing the theory of the case, evaluating alternative methods of presenting the evidence, cross-examining hostile witnesses, formulating legal arguments, and in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom").

One purpose of authorizing security for costs is to allow the court to have some control over the administration of a lawsuit. See Ilro Productions, Ltd. v. Music Fair Enterprises,

---

> the court in determining or ruling upon the motion shall be or be deemed to be a determination of any issue in the litigation or of the merits thereof.
>
> 391.3. provides:
>
> If, after hearing the evidence upon the motion, the court determines that the plaintiff is a vexatious litigant and that there is no reasonable probability that the plaintiff will prevail in the litigation against the moving defendant, the court shall order the plaintiff to furnish, for the benefit of the moving defendant, security in such amount and within such time as the court shall fix.
>
> 391.4. provides:
>
> When security that has been ordered furnished is not furnished as ordered, the litigation shall be dismissed as to the defendant for whose benefit it was ordered furnished.
>
> 391.6. provides:
>
> When a motion pursuant to Section 391.1 is filed prior to trial the litigation is stayed, and the moving defendant need not plead, until 10 days after the motion shall have been denied, or if granted, until 10 days after the required security has been furnished and the moving defendant given written notice thereof. When a motion pursuant to Section 391.1 is made at any time thereafter, the litigation shall be stayed for such period after the denial of the motion or the furnishing of the required security as the court shall determine.

94 F.R.D. 76, 78 (S.D.N.Y.1982) (citing <u>Leighton v. Paramount Pictures Corp.</u>, 340 F.2d 859, 861 (2d Cir. 1965). In determining whether to impose a bond, the court may "take all the pertinent circumstances into account including the conduct of the litigants and the background and purpose of the litigation." <u>Leighton</u>, 340 F. 2d at 861.

In order to recognize that plaintiff qualifies for status as a vexatious litigant, a summary of his previous seven actions is undertaken.

Case 00-128 WBS PAN commenced the litigation odyssey.[7] The defendants in this case were the SCUSD and several individual defendants. Plaintiff's claims originated out of an incident where a white student was sent to the office, and minority defendants complained that the white student was being treated better than minority students. Plaintiff made complaints to school management about the situation (in front of other students) about the situation such that the trial judge characterized plaintiff's speech as misconduct on the part of plaintiff. Numerous claims were dismissed in this litigation as having no legal basis, and summary judgment was entered adverse to plaintiff on his First Amendment claim(s). Plaintiff appealed, and the adverse judgment was affirmed by the Ninth Circuit.

Case 00-1766 LKK GGH involved a suit naming 11 school official defendants. Plaintiff (a substitute teacher) alleged that school resources were inequitably distributed between "white schools" and "minority schools" such that plaintiff was forced to endure "violent eruptions" by minority students. Plaintiff accused defendants of running an "apartheid" school system. Defendants were also accused of lying and giving plaintiff a poor evaluation. On motion to dismiss most claims were dismissed, and thereafter plaintiff failed to oppose summary judgment on the remaining claims. Judgment was awarded to defendants; the Ninth Circuit affirmed.

\\\\\

---

[7] The court takes judicial notice of its own records.

10

In Case 01-36 GEB JFM, plaintiff actually sued a student along with school officials. The dispute centered about plaintiff's disagreement with school management about classroom management practices. Plaintiff alleged infringement of his First Amendment rights and retaliation for having exercised those rights. The case was dismissed, and the dismissal affirmed on appeal.

In Case 04-1198 GEB DAD plaintiff sued various members of the SCUSD Board of trustees. Allegations included assertions that the Board permitted unequal allocation of resources along racial lines and improper placement of students along racial lines. The Board also permitted speech retaliation. The complaint was a cut and pasting hodge podge of allegations from previous suits. The complaint was dismissed. In recommending its dismissal, Judge Drozd opined in his November 8, 2005 Findings and Recommendations: "Moreover, the arguments presented by plaintiff in the motion pending before the court in this and his other cases are frivolous." Plaintiff's actions were described as harassing. Plaintiff's reaction to the judicial ruling was to file a motion for contempt against Judge Drozd – "Motion to Hold Judge Drozd [and others] in Contempt for Racist/Nazi." No appeal was taken from the dismissal of this case.

Case 05-112 MCE DAD involved plaintiff's reprise suit against the SCUSD Board members and other school officials. Plaintiff again complained of violations of his First Amendment rights as well as having to suffer racially motivated verbal assaults. Also, teaching assignments were made on the basis of race. The case was dismissed. In footnote 3 of the November 16, 2005 Findings and Recommendations, referencing plaintiff's allegations that defendants had lied, shown contempt and conspired, Judge Drozd reported:

> Such accusations appear to be routine for plaintiff, a former lawyer whom the Supreme Court of Ohio has permanently disbarred from the practice of law in that state. In 1990, the Supreme Court of Ohio found "the flagrant disrespect that [Mr. Spittal] has demonstrated toward the entire judicial system deserving of the legal profession's most severe sanction." Akron Bar Ass'n. v. Spittal, 51 Ohio St. 3d 121, 122, 554 N.E. 2d 1338, 1339 (1990). In disbarring plaintiff, the Supreme Court of Ohio relied on evidence presented to a disciplinary panel which:

11

> established that [Mr. Spittal] routinely, and without justification, referred to the decisions made by federal and Ohio judges as being the product of dishonesty, partiality, ignorance, and incompetence. The evidence further established that [Mr. Spittal] routinely, and without justification, accused judges and attorneys alike of lying. Indeed, the record manifests that [Mr. Spittal] made these remarks simply because he disagreed with a judge's decision or an attorney's argument.

51 Ohio St. 3d at 122, 554 N.E. 2d at 1339.

As the next case especially shows, Mr. Spittal has acted true to form.

Case 05-749 FCD DAD (Spittal v. Shubb et al.) involved plaintiff's suing the federal judges in the first case mentioned herein; plaintiff asserted that these judges "lied." In a motion for reconsideration from final judgment plaintiff averred: "Sick Judges should be removed from the Bench and Liars are Sick." Also, by now familiar allegations were made against officials of the SCUSD for violating plaintiff's First Amendment rights. The action was dismissed, and on motion for reconsideration, the Honorable Frank Damrell warned plaintiff that he was coming perilously close to a vexatious litigant order.

Finally, Case 05-1157 MCE KJM, plaintiff sued the lawyers for defendants in the original action and the action defending the federal judges for "lying." The caption of the complaint is instructive: "Action to Redress Violations... to include but not limited to the right to petition...without being dehumanized and vilified by opposing counsel and/or their clients...." This case was dismissed.

As seen from a description of the claims in the present case, plaintiff has followed his now familiar pattern.

Clearly, plaintiff qualifies as a vexatious litigant under several of the alternative grounds for finding vexatiousness. Plaintiff has brought and has had five or more cases adversely decided in the past seven years; he repeatedly attempts to re-litigate the validity of past decisions and/or repeatedly litigates the same claims against the same or related defendants; he has filed a plethora of frivolous motions, especially motions for contempt and reconsiderations in

past litigations.  Judging from the instant motions to dismiss, defendants are very likely to obtain the same adverse-to-plaintiff results which they and others have obtained in the previous litigations.

Accordingly, the court finds that an order imposing security for costs may be appropriate.  The court tentatively finds that in order to continue with litigation of this case, plaintiff should be required to post security in the amount of $10,000 in order to pay for potential sanctions, including attorneys' fees if this case were permitted to continue.

CONCLUSION

Plaintiff's complaint is ordered dismissed with leave to amend.  However, prior to the filing of any amended complaint, plaintiff shall show cause in writing why the above vexatious litigant order should not be entered.  This showing shall be filed no later than March 28, 2006.  Defendants may file a response, if desired, no later than April 4, 2006.

The court will give a filing date for any amended compliant in an order filed subsequent to the briefing; no amended complaint may be filed until such order is entered.

Plaintiff's presently filed motion for summary judgment is vacated from calendar pending the filing of an amended complaint.

DATED: 3/24/06

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:kr
Spittal2042.mdm.wpd-final.wpd